(No. 58731.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. DOROTHY TAYLOR *et al.*, Appellees.

*Opinion filed May 25, 1984.*

202

Neil F. Hartigan, Attorney General, of Springfield, and Richard M. Daley, State's Attorney, of Chicago (Michael B. Weinstein, Assistant Attorney General, and Michael E. Shabat, Joan S. Cherry, and David A. Shapiro, Assistant State's Attorneys, all of Chicago, of counsel), for the People.

James J. Doherty, Public Defender, of Chicago (Robert Guch and Robert P. Isaacson, Assistant Public Defenders, of counsel), for appellees.

JUSTICE WARD delivered the opinion of the court:

The defendants, Dorothy and Andre Taylor, were convicted of murder and armed violence following a bench trial in the circuit court of Cook County and were given sentences of natural life imprisonment under section 5—8—1(a)(1)(c) of the Unified Code of Corrections (Ill. Rev. Stat. 1981, ch. 38, par. 1005—8—1(a)(1)(c)). The appellate court affirmed the convictions but vacated the natural life sentences, and remanded the cause for resentencing. (115 Ill. App. 3d 621.) We granted the State's petition for leave to appeal under Rule 315 (87 Ill. 2d R. 315).

The facts are essentially undisputed. On January 12, 1981, Derrick Montgomery and Cedrick Maltbia were watching television at Patti Washington's apartment in Chicago. Patti Washington was not with them, but her eight-year-old daughter, Enicha, and a friend of Patti, Michael Simmons, were there.

At about 6 p.m. defendant Dorothy Taylor and her sister, Virgie Taylor, arrived at Washington's apartment to recover jewelry that Montgomery had apparently taken from Virgie. Upon entering the apartment Virgie went to a bedroom with Montgomery and asked for the

return of the jewelry. Montgomery refused, and as they left the bedroom arguing, Montgomery, according to Dorothy, pushed and struck Virgie. Dorothy then took a pistol from her purse, opened the apartment door and admitted the other defendant, Andre Taylor, the son of Virgie Taylor. Andre was armed with a shotgun. Dorothy ordered Virgie to take her jewelry. Virgie did so and Dorothy then handed her the pistol and told her to kill Montgomery. Virgie shot Montgomery twice. Dorothy then ordered Andre to "kill everyone." Andre shot Maltbia twice at close range and then aimed the shotgun at Michael Simmons and Enicha. Dorothy intervened, however, and told him not to shoot Simmons and Enicha. Andre then shot Montgomery once with the shotgun. The record does not show whether Montgomery was alive at this time.

The defendants were later indicted and both waived their right to a jury trial. Virgie Taylor was also charged. It appears that she was a fugitive at the time of the trial involved here. Andre Taylor, who was 16 at the time of the crimes, was tried as an adult along with Dorothy Taylor, his aunt. The defendants were found guilty of the murders of Derrick Montgomery and Cedrick Maltbia and also guilty of armed violence. The trial court sentenced them to natural life imprisonment under section 5—8—1(a)(1)(c) of the Unified Code of Corrections (Ill. Rev. Stat. 1981, ch. 38, par. 1005—8—1(a)(1)(c)), which provides:

"Sentence of Imprisonment for Felony.

(a) A sentence of imprisonment for a felony shall be a determinate sentence set by the court under this Section, according to the following limitations:

(1) for murder *** (c) if the defendant has previously been convicted of murder under any state or federal law or is found guilty of murdering more than one victim, the court shall sentence the defendant to

a term of natural life imprisonment."

The trial court considered that, under the statute, the only sentence it could impose was one of natural life imprisonment.

The appellate court held that if the statute is read as requiring a mandatory sentence, a trial court could not take into account any mitigating or rehabilitative factors in the sentencing procedure. The section would, therefore, be unconstitutional as violating section 11, article I, of the Constitution of Illinois of 1970, which provides that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." The appellate court also held that if section 5—8—1(a)(1)(c) were a mandatory legislative direction, it would be an invasion of the inherent power of the judiciary to impose sentences and violate the separation of powers clause of the Constitution of Illinois (Ill. Const. 1970, art. II, sec. 1). Rather than declaring section 5—8—1(a)(1)(c) to be unconstitutional, the appellate court read the "shall" in the section as permissive. It affirmed the convictions and remanded for resentencing of the defendants. 115 Ill. App. 3d 621, 630-31.

The People contend that the statute does mandate a natural life sentence, and that providing for it does not unduly infringe upon the judicial authority. Nor does it, the People say, violate the constitutionally stated objective of restoring offenders to useful citizenship.

The legislature has the power to declare and define conduct constituting a crime and to determine the nature and extent of punishment for it. (*People v. La Pointe* (1981), 88 Ill. 2d 482, 500; *People v. Williams* (1977), 66 Ill. 2d 179, 186.) Such legislation will not be nullified by courts unless it violates a constitutionally assured right. *People ex rel. Carey v. Bentivenga* (1981), 83 Ill. 2d 537, 542.

Article I, section 11, of the Constitution is applicable to

the legislature as well as to courts. Section 11 is directed to the legislature in its function of declaring what conduct is criminal and the penalties for the conduct. It is directed to the judiciary in that it requires courts not to abuse discretion in imposing sentences within the framework set by the legislature. (3 Record of Proceedings, Sixth Illinois Constitutional Convention 1393; *People v. Moore* (1973), 15 Ill. App. 3d 691, 693.) Thus section 11 requires the legislature, in defining crimes and their penalties, to consider the constitutional goals of restoring an offender to useful citizenship and of providing a penalty according to the seriousness of the offense. This court has observed that there is no indication that the possibility of rehabilitating an offender was to be given greater weight and consideration than the seriousness of the offense in determining a proper penalty. *People v. Waud* (1977), 69 Ill. 2d 588, 596.

There is a presumption of the validity of legislative classifications. (*Scott v. Department of Commerce & Community Affairs* (1981), 84 Ill. 2d 42, 50; *People v. Schwartz* (1976), 64 Ill. 2d 275, 280-81.) We conclude that the legislature considered the possible rehabilitation of an offender, as well as the seriousness of the offense of multiple murders, in determining that in the public interest there must be a mandatory minimum sentence of natural life imprisonment. The rehabilitative objective of article I, section 11, should not and does not prevent the legislature from fixing mandatory minimum penalties where it has been determined that no set of mitigating circumstances could allow a proper penalty of less than natural life for the crimes of two or more murders. It is within the legislative province to define offenses and determine the penalties required to protect the interests of our society. (*People v. Williams* (1977), 66 Ill. 2d 179; *People v. Breen* (1976), 62 Ill. 2d 323.) We cannot say that the penalty called for in section 5—8—1(a)(1)(c) violates article I of section 11.

It is appropriate to note that mandatory minimum sen-

tences for crimes, including rape in *People v. Moore* (1973), 15 Ill. App. 3d 691, armed robbery in *People v. Oestringer* (1974), 24 Ill. App. 3d 185, and murder in *People v. Cantrell* (1973), 14 Ill. App. 3d 1068, have been upheld against contentions that the authorizing statutes violated article I, section 11.

Another contention of the defendants is that if section 5—8—1(a)(1)(c) is construed to be mandatory in character, the section violates the separation of powers clause of the Constitution of Illinois of 1970 (Ill. Const. 1970, art. II, sec. 1), which provides: "The legislative, executive and judicial branches are separate. No branch shall exercise powers properly belonging to another."

In *People v. Davis* (1982), 93 Ill. 2d 155, 161, we observed that "the power to impose sentence is exclusively a function of the judiciary. *** The General Assembly has the power to enact laws governing judicial practice only where they do not unduly infringe upon the inherent powers of the judiciary." In *Davis* we considered a statute which provided that a trial court shall state its reasons for a sentence at the time of imposing sentence. We said that to construe the provision as mandatory on the court would cause the statute to be held to unduly infringe on the exercise of the judicial function to pronounce sentence. We held the provision not to be mandatory. The appellate court here cited *Davis* to support its interpretation of "shall" in section 5—8—1(a)(1)(c) as permissive.

*Davis*, however, can be distinguished. There we said that if the statute were interpreted as mandating that the trial judge state reasons for the sentence imposed, the legislature would be encroaching upon the judicial function of sentencing. The legislature would have been attempting to dictate to the courts what must be included in a court's pronouncement of sentence. A statute should be interpreted, if possible, so as to avoid doubts as to its validity. We, therefore, held that the provision was not mandatory,

but permissive. We went on to hold that, as the defendant did not request the reasons for the sentence he received, he had waived this issue for appeal. (93 Ill. 2d 155, 162-63.) Here, however, we have a different situation. Concerned here is the undoubted legislative power to define crimes and fix punishments. Only when a statute unduly infringes on the judicial authority will it be declared to be invalid. (*People v. Cox* (1980), 82 Ill. 2d 268, 274.) It can be seen that when legislatures exercise their acknowledged power to fix punishments for crimes they necessarily limit the discretion of courts when imposing sentence. In *People ex rel. Carey v. Cousins* (1979), 77 Ill. 2d 531, 549, this court observed:

> "The legislature may authorize the court to exercise broad discretion in the imposition of sentences by providing for the fixing of sentences within prescribed minimum and maximum years. Or the legislature may restrict the exercise of judicial discretion in sentencing, such as by providing for mandatory sentences."

The provision here for mandatory life imprisonment is certainly not novel. In *State v. Higgins* (Mo. 1979), 592 S.W.2d 151, 155, it was noted that, as of 1979, more than two-thirds of the States provided for mandatory life imprisonment sentences upon a conviction of first degree murder. That is still true today. Alabama (Ala. Code secs. 13A—5—39 (1982), 13A—5—40 (Supp. 1983)); Arizona (Ariz. Rev. Stat. sec. 13—703 (1983 Supp.)); Colorado (Colo. Rev. Stat. secs. 18—3—102(3) (1978), 18—1—105 (1983 Supp.)); Delaware (Del. Code tit. 11, sec. 4209 (1979)); District of Columbia (D.C. Code sec. 22—2404 (1981)); Florida (Fla. Stat. sec. 921.141 (1983 Supp.)); Georgia (Ga. Code sec. 26—1101 (1983)); Idaho (Idaho Code sec. 18—4004 (1979)); Iowa (Iowa Code secs. 707.2, 902.1 (1979)); Kansas (Kan. Stat. sec. 21—4501 (1981)); Louisiana (La. Rev. Stat. Ann. sec. 14:30 (1974 West)); Maryland (Md. Crim. Law Code Ann. art. 27, sec. 412 (1982)); Massachusetts (Mass. Gen. Laws

Ann. ch. 265, sec. 2 (1980)); Michigan (Mich. Stat. Ann. sec. 750.316 (1982 Supp.)); Minnesota (Minn. Stat. Ann. sec. 609.185 (1984 Supp. West)); Mississippi (Miss. Code Ann. sec. 97—3—21 (1973)); Missouri (Mo. Rev. Stat. sec. 565.008(2) (1979)); Nebraska (Neb. Rev. Stat. sec. 28—303 (1979)); Nevada (Nev. Rev. Stat. sec. 200.030(4) (1979)); New Hampshire (N.H. Rev. Stat. Ann. sec. 630:1—a (1974)); North Carolina (N.C. Gen. Stat. sec. 14—17 (1981)); Ohio (Ohio Rev. Code Ann. sec. 2929.02 (1982 Page)); Oklahoma (Okla. Stat. tit. 21, sec. 701.9 (1983)); Pennsylvania (18 Pa. Cons. Stat. Ann. sec. 1102 (1983)); Rhode Island (R.I. Gen. Laws sec. 11—23—2 (1981)); South Carolina (S.C. Code sec. 16—3—20 (1977)); South Dakota (S.D. Compiled Laws Ann. secs. 22—16—12, 22—6—1 (1983 Supp.)); Tennessee (Tenn. Code Ann. sec. 39—2402 (1975)); Utah (Utah Code Ann. secs. 76—5—202, 76—3—206 (1978)); Vermont (Vt. Stat. Ann. tit. 13, sec. 2303 (1974)); Washington (Wash. Rev. Code sec. 9A—32.040 (1977)); West Virginia (W. Va. Code sec. 61—2—2 (1977)); Wisconsin (Wis. Stat. Ann. secs. 940.01, 939.50 (1982)); Wyoming (Wyo. Stat. sec. 6—2—101 (1977)).

In at least the following decisions the statutes have been upheld against attacks claiming violation of separation of powers provisions: *State v. Taylor* (1957), 82 Ariz. 289, 312 P.2d 162; *People v. Hall* (1976), 396 Mich. 650, 242 N.W.2d 377; *State v. Olinghouse* (Mo. 1980), 605 S.W.2d 58; *State v. Farrow* (1978), 118 N.H. 296, 386 A.2d 808; *State v. Vaccaro* (1979), 121 R.I. 788, 403 A.2d 649.

We hold that the provisions in section 5—8—1(a)(1)(c) for a sentence of natural life imprisonment upon conviction of murdering more than one victim do not unduly infringe upon the judicial power and do not violate article II, section 1, of our constitution.

For the reasons given, the portion of the judgment of the appellate court which affirmed the murder and armed-violence convictions is affirmed; the portion of the judg-

210

ment of the appellate court which vacated the sentences of natural life and remanded for resentencing is reversed. The judgment of the circuit court of Cook County is affirmed.

*Appellate court affirmed in part and reversed in part; circuit court affirmed.*