THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. AR-THUR ALMENDAREZ *et al.*, Defendants-Appellants.

First District (4th Division)   Nos. 1—90—1863, 1—91—0171 cons.

Opinion filed August 18, 1994.—Rehearing denied September 21, 1994.

Rita A. Fry, Public Defender (Andrea Monsees, Assistant Public Defender, of counsel), and Michael J. Pelletier and Ann C. McCallister, both of State Appellate Defender's Office, both of Chicago, for appellants.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Theodore F. Burtzos, and Janet Powers Doyle, Assistant State's Attorneys, of counsel), for the People.

JUSTICE CAHILL delivered the opinion of the court:

After a trial before separate juries, Arthur Almendarez and Francisco Nanez were convicted of aggravated arson and the murder of two persons who died in the fire. The court sentenced each defendant to natural life in prison without parole. We consolidated their appeals and now affirm the convictions.

John Galvan, a third defendant, was tried separately. We affirmed his conviction for aggravated arson and murder in *People v. Galvan* (1993), 244 Ill. App. 3d 298, 614 N.E.2d 391. The narrative of the crime and arrests appears in *Galvan*, and so we do not repeat it here.

On appeal Almendarez raises eight issues and Nanez five. We first address the issues raised by Almendarez.

Almendarez argues that the trial court erred when it denied his motion to quash the arrest and suppress the subsequent statement.

Detective Switski testified at the hearing on the motion to quash. He stated that he spoke with Jose Ramirez, Soccoro Flores, Michael Almendarez, and John Galvan before he arrested Arthur Almendarez.

Jose Ramirez told Detective Switski that seconds before the fire started he saw John Galvan with a person named "Michael" and two other men walking together about a half block away from the house on 24th Place. Ramirez identified a photo of Michael Almendarez as the man he saw walking with John Galvan. The police brought Michael Almendarez and John Galvan to the station. Michael Almendarez stated that Galvan and Nanez said they started the fire. They told him that Nanez threw a bottle full of gas at the house and, when it did not ignite, Galvan lit it with a cigarette.

Galvan confessed and stated to police that he, Nanez, and Arthur Almendarez agreed to "burn out" a rival gang member who lived on 24th Place near Rockwell. Galvan said Nanez and Almendarez bought the gas and Nanez threw the bottle filled with gas at the house. Galvan further admitted that he threw a lit cigarette at the house and started the fire.

Soccoro Flores told police she saw three Hispanic men standing in an alley on 24th Place moments before the fire. She then saw one of the men throw something and the house catch on fire.

The police then arrested Arthur Almendarez on the sidewalk in front of his house.

■ Almendarez contends he was arrested without probable cause. We disagree. Probable cause exists when the facts and circumstances known to the officers are such that a reasonable person would believe the suspect has committed a crime. (*People v. Montgomery* (1986), 112 Ill. 2d 517, 494 N.E.2d 475.) Probable cause may be established by an accomplice where he makes a statement against his penal interest or the statement corroborates what the police already know. *People v. James* (1987), 118 Ill. 2d 214, 514 N.E.2d 998.

In *James*, as here, the defendant was implicated by an accomplice who confessed and described the actions of both parties. The court held that a statement of an accomplice made while in police custody, implicating another, may be probable cause to arrest the person implicated if there is some indicia of reliability. (*James*, 118 Ill. 2d at 225.) The *James* court set out three elements which enhance the reliability of such a statement: (1) it is against penal interest; (2) it was not made in response to promises of leniency or other inducements; and (3) it is supported by facts learned through police investigation. *James*, 118 Ill. 2d at 224-25.

Here Galvan implicated himself as well as Almendarez in the arson. His admission to the police was not made in response to a

promise of leniency or other inducement. It is supported by facts the police learned from talking with Jose Ramirez, Soccoro Flores, and Michael Almendarez.

■ Second, Almendarez argues that he was denied a fair trial when the court allowed Jose Ramirez to testify that John Galvan was a member of a gang. The State responds that the evidence was properly admitted because it was relevant to prove motive, and we agree.

Gang evidence is admissible to show a common purpose or design or to provide a motive for an otherwise inexplicable act. (*People v. Smith* (1990), 141 Ill. 2d 40, 58, 565 N.E.2d 900.) The probative value of such evidence outweighs its prejudicial effect and the trier of fact may consider it. *People v. Buchanan* (1991), 211 Ill. App. 3d 305, 320, 570 N.E.2d 344.

Here Detective Hanrahan testified that Almendarez admitted Galvan told him he was having problems with some "rival" gang members living in the area and wanted to burn their house down. The testimony that Galvan was a gang member and wanted to set fire to a rival gang member's house was the motive for an otherwise inexplicable act. In measuring prejudicial impact, we note that no one accused Almendarez of being a gang member. When the State asked Ramirez, "Do you know if Arthur Almendarez, the defendant, was a member of any street gang?" Ramirez answered, "I never seen him, you know; I never seen him."

■ Almendarez's third argument is that he was prejudiced by repeated references to the court-reported statements of codefendants. Almendarez takes issue with the trial testimony of Assistant State's Attorney Joel Leighton, who was assigned to the felony review unit on June 8, 1987, and called to the station on that night. Leighton interviewed John Galvan and then Arthur Almendarez. Almendarez then made a written statement. At this point in his testimony, Leighton read to the jury Almendarez's statement admitting involvement in the crime. Leighton next testified that, after Almendarez made his statement, he spoke with Nanez for about 10 minutes. Leighton then interviewed some other witnesses he did not identify and called for a court reporter. He was present when two court-reported statements were made. The court reporter typed the statements, and Leighton reviewed them with the persons who made them.

Almendarez claims this testimony "went beyond what was necessary to describe the investigation and arrest." We disagree. Leighton did not reveal the substance of his conversations with the nontestifying codefendants, only that conversations had taken place in the course of his investigation of the arson. Illinois courts have held this

testimony to be proper, even if a logical inference may be drawn that the witness took subsequent steps as a result of the substance of the conversation. *People v. Jones* (1992), 153 Ill. 2d 155, 606 N.E.2d 1145.

■ Almendarez's fourth contention is that the prosecutor made improper remarks in closing argument which denied him a fair trial. He has waived review of the issue by failing to properly object at trial and include the objections with specificity in a post-trial motion. (*People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124.) We decline to examine this issue under the plain error doctrine in view of the overwhelming evidence of guilt.

■ Almendarez's fifth contention is that the trial court erred in finding that the State offered race-neutral explanations for peremptory challenges to exclude two Hispanic veniremembers in violation of *Batson v. Kentucky* (1986), 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712. Because the State explained its use of peremptory challenges, we do not address the moot issue of whether Almendarez has shown a *prima facie* case of racial discrimination. (See *Hernandez v. New York* (1991), 500 U.S. 352, 359, 114 L. Ed. 2d 395, 405, 111 S. Ct. 1859, 1866.) We will not overturn the court's finding that the State's explanations were race-neutral unless it is clearly erroneous. *People v. Andrews* (1993), 155 Ill. 2d 286, 293-94, 614 N.E.2d 1184.

The State explained that it excused Elvira DeBorde because she spoke English and Spanish fluently. At least two witnesses were scheduled to testify through a Spanish-English translator. The State explained that it did not want to risk bilingual jurors gleaning nuances from testimony that other jurors might not hear. The State excused Concepcion Sierra because she worked as a teacher's aide at an elementary school when Francisco Nanez attended the school and because the school is near the crime scene.

We conclude that the trial court's finding was not clearly erroneous. Almendarez does not contend that a juror shared any of the characteristics of either Sierra or DeBorde. It is race-neutral for the State to believe that DeBorde might pick up nuances from witnesses testifying through an interpreter. It is also race-neutral for the State to believe that Sierra might discover she knew Nanez or heard or read about the crime.

■ Almendarez's sixth argument is that the court abused its discretion when it overruled three defense objections at trial. The first happened during the testimony of William Walton, a gas station attendant who sold gas to an Hispanic man on the night of the fire. Walton testified that the man had a milk container but no gas can. Walton said the man told him that his car had run out of gas a few blocks away, so Walton sold him the gas. Almendarez argues that the

man's statement is hearsay and improperly admitted. It is not. The context of the examination makes clear that the statement was offered, not to prove that the man's car had run out of gas, but to show why Mr. Walton sold the man gas even though he did not have a gas container.

■ The second objection occurred during testimony by Blanca Martinez whose two brothers died in the fire. She began to cry while testifying. Defendant objected and asked for a mistrial which the court denied. A genuine emotional outburst by a witness does not require a mistrial. (*People v. Smith* (1993), 242 Ill. App. 3d 344, 609 N.E.2d 857.) Here the State did not provoke Martinez's display of emotion. The court was in the best position to asses the impact that this incident had on the jury. We find the court did not abuse its discretion.

■ The third objection occurred during the testimony of Detective Scheithauer, who testified to photographs admitted in evidence. He showed where stairs led and where tiles burned in a photograph of the house. Almendarez fails to show how this testimony unfairly prejudiced him.

■ Almendarez's seventh argument is that the aggravated arson statute is unconstitutional. (See Ill. Rev. Stat. 1991, ch. 38, par. 20—1.1.) He adopts the defense argument on this issue in *Galvan* (244 Ill. App. 3d at 305-06). We adhere to our reasoning rejecting that argument. See *Galvan*, 244 Ill. App. 3d at 305.

We next address the Nanez trial. His statement was admitted and published to the jury. In it, he admitted that John Galvan told him that he wanted to burn somebody's house down because Galvan had some kind of difficulty with the person. Nanez then stated that Galvan and Almendarez "convinced me to go along with it." He went to the gas station and watched Galvan and Almendarez buy gas and put it into a milk container. The three men then drove to an alley near 24th Place, where Almendarez found an empty liquor bottle. Galvan poured the gas into the bottle. Nanez then stated, "we found a piece of clothing from a cocktail bomb." He stated that Galvan lit the cloth and threw the bottle through the window of the house. Nanez then left with Galvan and Almendarez. The defense proceeded on the theory that the statement and evidence were insufficient to show Nanez's involvement in the crime. The jury found Nanez guilty of murder and aggravated arson.

■ Nanez first argues that the prior inconsistent statement of Michael Almendarez was erroneously admitted as substantive rather than impeaching evidence. Michael Almendarez made a written statement that Galvan and Nanez told him they started the fire. He

stated that they said Nanez threw a bottle of gas at the house and Galvan ignited the gas. At trial Michael Almendarez denied the statement and claimed he made it because the police coerced him. The court allowed the State to impeach Michael Almendarez with the written statement. The State then made this reference to the statement in closing argument:

> "You heard *** from Michael Almendarez and you heard that a couple weeks after the fire, in early October of 1986, [Nanez is] out on the street and he runs into Michael Almendarez *** and he's with John Galvan and they start talking, friend to friend. And you heard what [Nanez] said, 'We're the ones that started the fire. I threw the bottle. It broke but didn't ignite and John Galvan walked up and threw a match on it and it ignited.' *** [T]here are two versions that you've heard. One, a version from Michael Almendarez ***. *** [U]nder either version, ladies and gentlemen, he is guilty."

Under Illinois law, prior inconsistent statements may be admitted as substantive evidence under section 115—10.1 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1989, ch. 38, par. 115—10.1) when certain conditions are met. The State concedes that Michael Almendarez's statement does not satisfy the conditions for admission under section 115—10.1 because it does not relate to an event within personal knowledge. (See Ill. Rev. Stat. 1989, ch. 38, par. 115—10.1(c)(2); *People v. Cooper* (1989), 188 Ill. App. 3d 971, 544 N.E.2d 1273.) But the State argues that the error is harmless because there was abundant evidence to sustain the Nanez verdict and no reasonable probability that the verdict would have been different had the comment not been made.

"When the competent evidence in the record establishes the defendant's guilt beyond a reasonable doubt and it can be concluded that retrial without the erroneous admission of the challenged evidence would produce no different result, the conviction may be affirmed." (*People v. Arman* (1989), 131 Ill. 2d 115, 124, 545 N.E.2d 658.) There is sufficient evidence to sustain the jury's verdict finding Nanez guilty beyond a reasonable doubt on a theory of accountability based upon his own statement.

A person is legally accountable for the conduct of another when, either before or during the commission of a crime, and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid, such person in the planning or commission of the crime. (Ill. Rev. Stat. 1989, ch. 38, par. 5—2.) Evidence that the defendant voluntarily attached himself to a group bent on illegal acts with knowledge of its design supports an inference

that he shared the common purpose and supports a conviction for a crime committed by another. (*People v. J.H.* (1990), 136 Ill. 2d 1, 17, 554 N.E.2d 961.) The statement of Nanez standing alone meets the statutory definition. We note here the testimony of Detective Switski that when he took Nanez's oral statement, Nanez admitted he found the glass bottle to hold the gas and he assisted in pouring the gas from the milk container into the glass bottle.

■ Nanez's second argument is that he was denied a fair trial when the court allowed Jose Ramirez to testify that John Galvan was a member of a gang. He makes the same argument as Almendarez and also relies on *Smith* (141 Ill. 2d 40, 565 N.E.2d 900) for the rule that "when the State undertakes to prove facts which the State asserts constitute a motive for the crime charged, it must be shown that the accused knew of those facts." *Smith*, 141 Ill. 2d at 56.

*Smith* and the cases upon which it relies are distinguishable from the facts before us. In *Smith*, which was not an accountability case, the State introduced evidence of the victim's treatment of gang members in prison while he was a deputy warden to suggest that it may have been a motive for the defendant's murder of the victim. But the State failed to introduce evidence that the defendant knew of the victim's treatment of gang members in his role as warden. Lacking evidence that the defendant knew of the victim's behavior, the State's introduction of such motive evidence was speculative.

No such speculation was indulged in by the State in this case. The evidence showed that Galvan was a gang member, he had some kind of difficulty with the person whose house he burned, and Nanez, in his own statement, admitted Galvan told him he had difficulties with the person whose house they burned.

Evidence of common design, which includes motive evidence unquestionably attributable to one defendant, is not speculative when introduced as evidence against a second defendant charged on an accountability theory. It was enough that Nanez knew Galvan had a motive to make that motive probative in the case against Nanez.

■ Nanez's third argument is that the court erred when it responded to a question from the jury. During deliberations the jurors sent the trial judge a note asking: "Is the fact that F. Nanez *is present* with the knowledge of his friends' intentions, make him legally responsible for the conduct of another person?" Over the defendant's objection, the court directed the jurors to continue their deliberations using the instructions they had been given.

A trial court has wide discretion in deciding whether to respond to a jury question. (*People v. Flynn* (1988), 172 Ill. App. 3d 318, 323, 526 N.E.2d 579.) The court has a duty to avoid giving the jury its

opinion on the evidence and should not answer a question that requires a conclusion on the issues at trial. (*People v. Williams* (1975), 60 Ill. 2d 1, 13, 322 N.E.2d 819.) Here the jurors were given the proper Illinois Pattern Jury Instruction on accountability, and the court did not abuse its discretion in referring them to the instructions.

■ Fourth, Nanez argues he was unfairly prejudiced by comments made by the prosecutor during closing argument. Nanez contends the prosecutor misstated the law of accountability by asserting that Nanez's presence alone rendered him guilty. We find that where defense counsel responded to this argument and the court properly instructed the jury on the law of accountability, any error was rendered harmless.

■ Nanez next challenges the prosecutor's use of the dictionary definition of the word "convince" during rebuttal, contending that the prosecutor improperly relied on facts not in evidence. Nanez admitted in his statement that Galvan and Almendarez "convinced" him to aid them in their plan to burn the victims' house. During defense closing argument counsel stated, "Mr. Leighton never asks [Nanez] *** what he means by the word 'convince.' 'Convince' can mean all kinds of things and you know that. You can be convinced to do things in many different ways." The prosecutor then responded in rebuttal, "The dictionary says the word 'convince,' to bring by argument to belief, consent or cause a course of action. To persuade." Where the complained-of remarks are within the rebuttal argument, they will not be held improper if invited by the defense counsel's argument. (*People v. McKinley* (1992), 242 Ill. App. 3d 124, 609 N.E.2d 720.) We find that to be the case here.

■ Nanez also argues that the prosecutor improperly shifted the burden when he stated, "At the gas station did Francisco Nanez tell his buddies, hey, I've changed my mind, I want no part of this? *** There is no proof in this case *** that Francisco Nanez wanted to divorce himself." Defense counsel objected to these comments, and the court sustained the objections. We find that any error was cured when the court sustained the objections and instructed the jury to disregard remarks not based on the evidence. *People v. Carlson* (1982), 92 Ill. 2d 440, 442 N.E.2d 504.

■ Nanez next complains of the prosecutor's references to gang evidence during closing argument. We also find that any error was cured when the court sustained defense counsel's objections and instructed the jury to disregard remarks not based on the evidence.

■ Finally Almendarez and Nanez argue that the mandatory life imprisonment statute under which they were sentenced is unconstitutional. Section 5—8—1(a)(1)(c) of the Uniform Code of Corrections

mandates a sentence of life imprisonment without parole in cases of multiple murder convictions. (Ill. Rev. Stat. 1991, ch. 38, par. 1005—8—1(a)(1)(c).) Almendarez and Nanez make the same arguments that the defendant made in *People v. Galvan* (244 Ill. App. 3d at 306). Nanez additionally argues that the statute violates the eighth amendment prohibition against cruel and unusual punishment.

The validity of section 5—8—1(a)(1)(c) has been upheld by Illinois courts, and challenges similar to those raised by Almendarez and Nanez have been rejected. See *People v. Taylor* (1984), 102 Ill. 2d 201, 464 N.E.2d 1059; *People v. Glenn* (1992), 233 Ill. App. 3d 666, 599 N.E.2d 1220; *People v. Rodriguez* (1985), 134 Ill. App. 3d 582, 480 N.E.2d 1147.

Affirmed.

JOHNSON and THEIS, JJ., concur.