**UNITED STATES of America ex rel. Shawn HUBBARD, Petitioner,**

v.

**Thomas F. PAGE, James E. Ryan,[1] Respondents.**

No. 97 C 2434.

United States District Court, N.D. Illinois, Eastern Division.

Nov. 25, 1997.

---

1. Attorney General Ryan is improperly named in this action. Under Rules 2(a) and 2(b) of the Rules Governing Section 2254 Cases in the United States District Courts, when a petitioner is currently in custody, the petition for habeas corpus relief should only name the state officer having custody of the petitioner. Only when the petitioner may be subject to future custody should the petition name as respondent both the state officer who presently has custody over the applicant and the state attorney general. *See* RULES GOVERNING SECTION 2254 CASES IN THE UNITED STATES DISTRICT COURTS, Rule 2(a) & (b); *see also Hogan v. Hanks,* 97 F.3d 189, 190 (7th Cir.1996) (citing *Cruz v. Warden of Dwight Correctional Center,* 907 F.2d 665, 665 n. 1 (7th Cir.1990)). As Hubbards is now in state custody, Attorney General Ryan is not a proper party.

Shaun Hubbard, Menard, IL, for Petitioner.

Elise F. Cummings, Illinois Attorney General's Office, Chicago, IL, for Respondents.

## MEMORANDUM OPINION AND ORDER

CASTILLO, District Judge.

■ Following a jury trial, Petitioner Shawn Hubbard was convicted of two counts of first degree murder and three counts of armed robbery. The court sentenced Hubbard to natural life in prison without the possibility of parole on the murder counts, and a concurrent 30–year sentence on the armed robbery counts. While Hubbard pursued state appellate remedies without success, he failed to file a post conviction petition with the state courts. Hubbard now petitions this Court for a writ of habeas corpus under the newly amended 28 U.S.C. § 2254.[2] Hubbard raises only one issue in his pro se petition—that his sentence is unconstitutional under the Eighth Amendment.[3] After careful review, we deny Hubbard's petition.

### RELEVANT FACTS

When considering a habeas corpus petition, the Court presumes that the factual determinations of the state court are correct. 28 U.S.C. § 2254(e)(1). Accordingly, we adopt the facts as set forth by the Illinois Appellate Court. See People v. Hubbard, No. 93–4419 (Ill.App.Ct. Dec. 29, 1995).

Hubbard was convicted in the murders of Kyong Pang and John Hoover, and the armed robbery that occurred at Pang's General Merchandise Store. Also charged, but tried separately, were Percy Hawkins, Darren Smith, and Rodney Williams. The following evidence was presented at Hubbard's trial.

Michael King, an employee at Pang's store, testified that he, Hoover, and Pang were working at the store in the early evening of February 7, 1990, when a black male, later identified as Percy Hawkins, entered the store. Hawkins grabbed Pang in a headlock and, while holding a gun to Pang's head, ordered Hoover and King to go to the back room and lie face down on the floor. Hoover refused and Hawkins shot him. King complied with Hoover's instructions.

From the backroom, King heard a struggle followed by a second gun shot. Almost immediately, the front door opened and two men, later identified as Hubbard and Rodney Williams, entered the store. King could not see them, but he could hear their conversation. One of the two asked "What happened?", while the other wanted to know "Why did you shoot him?" Hawkins told his two accomplices to "shut up and grab the loot." King heard the men breaking glass cases and removing jewelry. After three men left the store, King sounded the store alarm. The police and paramedics arrived shortly thereafter.

On September 22, 1993, the police arrested Hubbard after receiving a tip that he was involved in the robbery. Following his arrest, Hubbard gave the police a full statement in the presence of a court reporter. Hubbard recounted that on February 6, 1990, the day before the robbery, Rodney Williams asked him whether he wanted to "get some money." Hubbard was quite in-

---

2. Hubbards filed this petition on April 7, 1997, approximately one year after Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. 104–132, 110 Stat. 1214. Under the Act's amendments to 28 U.S.C. § 2254(d), a state court's application of federal constitutional law is reviewed only for reasonableness. See Lindh v. Murphy, 96 F.3d 856, 879 (7th Cir.1996), rev'd on other grounds, — U.S. ——, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997); Spreitzer v. Peters, 114 F.3d 1435, 1441–42 (7th Cir.1997). The amendments apply to petitions (such as Hubbards's) that were filed after the date of enactment. Lindh, — U.S. at —— ——, 117 S.Ct. at 2063–64.

3. In the heading announcing his claim, Hubbards also asserts that his sentence violates the Illinois Constitution. Beyond this brief introduction, the claim never appears again in Hubbards's petition. Because Hubbard has abandoned this claim by failing to support it with authority or argument, and because Hubbard cannot fashion a cognizable habeas challenge to his sentence based upon the Illinois Constitution claim, we will address only the Eighth Amendment claim. See Haas v. Abrahamson, 910 F.2d 384, 389 (7th Cir.1990).

terested and recruited Percy Hawkins to assist them. Williams told Hubbard and Hawkins of his plan to rob a jewelry store on west Madison Avenue in Chicago. Hawkins would enter the store and announce the robbery, Hubbard would break the jewelry case, and Hubbard and Williams would steal the jewelry. A fourth accomplice, Darren Smith, would act as a "look out" on the street. The group went to Smith's house to retrieve a gun and then proceeded to Pang's store. On the way to the store, Hubbard picked up a rock to use to break the glass jewelry cases. Hubbard's description of the robbery was substantially similar to King's testimony, except Hubbard indicated that he was already in the store when Hawkins shot Hoover. In addition, Hubbard admitted keeping two gold chains as his share of the booty.

Following his indictment, Hubbard filed motion to suppress the statement, claiming that he gave the statement under duress. In support of his motion, Hubbard stated that the police threatened that if Hubbard did not cooperate he would take the fall for the two murders and spend the rest of his life in prison, while the other participants would get off scot-free. The police allegedly informed Hubbard that if he signed the statement, he would be charged only with armed robbery and receive a ten-year sentence. Furthermore, Hubbard claimed the police convinced him that if he admitted keeping some of the jewelry, even though he did not, the admission would bolster the credibility of his statement. The trial court denied Hubbard's motion to suppress and read his statement to the jury.

At trial, Hubbard described the events surrounding the crime. Hubbard explained that once the group arrived at Pang's store, the plan went awry. Within minutes of entering the store, Hawkins had shot two of the three employees. Hubbard testified that he never intended for anyone to be shot, and that the group never discussed the possibility that someone would be murdered. Hubbard acknowledged, however, that the group needed a gun to pull off their heist. Hubbard claimed that after Hawkins shot Hoover, Hawkins turned the gun on him and ordered Hubbard to steal the jewelry. As they ran out of the store, Hubbard stated that he didn't want to have anything to do with the robbery and therefore kept nothing. Hawkins allegedly threatened Hubbard and Williams that he would "have his brothers deal with [them]" if Hubbard and Williams didn't keep quiet about the incident. Hubbard further explained that his confession was the result of coercion.

After hearing the testimony, the jury found Hubbard guilty on two counts of first degree murder and three counts of armed robbery. On September 9, 1993, the trial court denied Hubbard's motion for a new trial.

At Hubbard's sentencing hearing, the State sought the death penalty on the grounds that Hubbard had committed felony murder and was guilty of murdering more than one person. The State called Officer Michael Glines of the Chicago Police Department to describe the events leading up to Hubbard's arrest. The State also offered into evidence a copy of Hubbard's 1992 conviction for possession of a controlled substance with intent to deliver, for which he served a six month sentence and was placed on 20 months probation. In mitigation, Hubbard's sister and mother testified to Hubbard's close relationship with his family, his involvement with the church, and his strong employment background.

After hearing the factors in aggravation and mitigation, the court determined that although the operative factors necessary to impose a death sentence were present, sufficient mitigating factors existed to avoid that disposition. The court then turned its attention to the statutorily designated sentencing factors. Pursuant to section 5–8–1(a)(1)(c) of the Criminal Code, the court sentenced the 22–year–old Hubbard to life imprisonment without the possibility of parole. 730 ILCS 5/5–8–1(a)(1)(c) (1992) (mandating a minimum life sentence for multiple murders). In addition, the court sentenced Hubbard to 30 years imprisonment for robbery, to be served concurrently with the life sentence.

## PROCEEDINGS ON DIRECT APPEAL

On direct appeal, Hubbard argued that the trial court's imposition of the mandatory sen-

tence provided for in section 5–8–1(a)(1)(c) of the Code violated the Eighth Amendment's prohibition against cruel and unusual punishment. Hubbard did not challenge the statute facially, but rather claimed that certain mitigating factors render the section unconstitutional as it applies to him. Specifically, Hubbard contended that because he was only eighteen years old when he committed the crime, he did not intend to kill anyone, he did not personally injure anyone, and his prior criminal record was minimal, the imposition of a life sentence was not proportionate to the crime under *Harmelin v. Michigan*, 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991).

The appellate court disagreed, finding that extensive federal and state precedent supported the constitutionality of the statute on its face and as applied to Hubbard. The court also rejected Hubbard's claim that his mandatory sentence violated the Illinois Constitution's goal of "restoring the offender to useful citizenship" (Ill. Const.1970, art. I, sec.11) and the Illinois Criminal Code's proportionality requirement. 720 ILCS 5/1–2(d) (1992). The court noted that section 5–8–1(a)(1)(c) of the Criminal Code had survived substantially similar constitutional attacks in the past. *People v. Taylor*, 102 Ill.2d 201, 80 Ill.Dec. 76, 464 N.E.2d 1059 (1984). Furthermore, the court explained that section 5–8–1(a)(1)(c) does not permit courts to consider mitigating factors in imposing this mandatory sentence, because the legislature has already done so. The legislature's determination that a life sentence for multiple murders is appropriate despite the possibility of rehabilitation fully comports with Illinois law. *See Taylor*, 102 Ill.2d at 206, 80 Ill.Dec. 76, 464 N.E.2d 1059. Consequently, on December 29, 1995, the appellate court affirmed Hubbard's conviction and sentence.

Hubbard filed a petition for leave to appeal to the Illinois Supreme Court, arguing that the appellate court erred in ruling that Hubbard's sentence violated neither the federal nor the Illinois constitutions. The Illinois Supreme Court summarily denied the PLA on April 3, 1996. Hubbard failed to file a petition for post conviction relief in the Illinois courts.

## ANALYSIS

### I. Exhaustion and Procedural Default

#### A. Legal Standards

■ The preliminary step in any habeas corpus proceeding is determining whether the petition has complied with the requirements to exhaust state remedies and to avoid procedurally defaulting the substantive claims by adequately presenting them to the state courts. *Lostutter v. Peters*, 50 F.3d 392, 394 (7th Cir.), *cert. denied*, 516 U.S. 843, 116 S.Ct. 130, 133 L.Ed.2d 79 (1995). "Exhaustion is accomplished when claims have been presented to the highest state court for a ruling on the merits, or when the claims could not be brought in state court because no remedies remain available at the time the federal petition is filed." *Farrell v. Lane*, 939 F.2d 409, 410 (7th Cir.1991) (citing *United States ex rel. Simmons v. Gramley*, 915 F.2d 1128, 1132 (7th Cir.1990); and *Engle v. Isaac*, 456 U.S. 107, 125 n. 28, 102 S.Ct. 1558, 1570 n. 28, 71 L.Ed.2d 783 (1982)). As the Supreme Court noted in *Coleman v. Thompson*, 501 U.S. 722, 731, 111 S.Ct. 2546, 2554, 115 L.Ed.2d 640 (1991), the exhaustion requirement is "grounded in principles of comity; in a federal system, the States should have the first opportunity to address and correct alleged violations of [a] state prisoner's federal rights."

■ Hubbard's Eighth Amendment claim is clearly exhausted despite his failure to file a petition seeking post conviction relief in state court. *Gomez v. Acevedo*, 106 F.3d 192, 195–96 (7th Cir.1997). Hubbard raised the same claims before the state court on direct appeal as he raises in his federal habeas petition. He is not required to have sought post conviction relief of these claims for exhaustion, because any attempt to do so would have been futile. *See People v. Coleman*, 168 Ill.2d 509, 214 Ill.Dec. 212, 660 N.E.2d 919, 927 (1995), *cert. denied*, —— U.S. ——, 117 S.Ct. 91, 136 L.Ed.2d 47 (1996) ("determinations of the reviewing court on direct appeal are res judicata as to issues actually decided and issues that could have been raised on direct appeal but were not are waived.").

Furthermore, while certain post conviction remedies may have once existed, they were no longer available at the time Hubbard filed his habeas petition. *United States ex rel. Rankins v. Detella*, 1997 WL 136295, at *3 (N.D.Ill. Mar.19, 1997).[4]

■ We cannot proceed to substantive review, however, if Hubbard procedurally defaulted his Eighth Amendment challenge. A habeas petitioner's claims are procedurally defaulted when the federal claims were not "fairly presented" to the state courts. *Jones v. Washington*, 15 F.3d 671, 675 (7th Cir. 1994); *Verdin v. O'Leary*, 972 F.2d 1467, 1474 (7th Cir.1992). Procedural default "occurs when a claim could have been but was not presented to the state court and cannot, at the time that the federal court reviews the habeas petition, be presented to the state court." *Resnover v.. Pearson*, 965 F.2d 1453, 1458 (7th Cir.1992). Habeas petitioners may fall into the procedural default trap by failing to pursue all the appeals required under state law in a timely manner, or by neglecting—notwithstanding diligent pursuit of all required appeals—to raise at the state level the federal claims asserted in the habeas petition. *See United States ex rel. Balderas v. Godinez*, 890 F.Supp. 732, 738 (N.D.Ill.1995). Procedural default also occurs when the state court decision supporting the petitioner's confinement was decided on an adequate and independent state law ground (either substantive or procedural). *See Coleman*, 501 U.S. at 729–732, 111 S.Ct. at 2553–2555. As *Coleman* explained, "[j]ust as in those cases in which a state prisoner fails to exhaust state remedies, a habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance." *Id.* at 731–32, 111 S.Ct. at 2554–55.

The State readily concedes, and we agree, that Hubbard fully and fairly presented his Eighth Amendment challenge to the Illinois courts on direct review. Accordingly, we move to the merits of Hubbard's petition.

## II. DECISION ON THE MERITS

### A. Standard of Review

■ The standard governing our review of Hubbards's Eighth Amendment challenge is strict. Under the recently amended habeas corpus statute, federal courts must deny a petition for habeas relief with respect to any claim adjudicated on the merits in a state court unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Under the amended statute, federal courts must accord "greater deference to the determinations made by state courts than they were required to under the previous law." *Spreitzer v. Peters*, 114 F.3d 1435, 1441 (7th Cir.1997) (internal quotations and citations omitted). The standard of review for mixed constitutional questions of law and fact is whether the state court's application of clearly established Supreme Court law was reasonable. *Id.* A state court has reasonably applied clearly established Supreme Court caselaw if its application is "at least minimally consistent with the facts and circumstances of the case." *Id.* at 1442. Put another way, "[t]he statutory 'unreasonableness' standard allows the state court's conclusion to stand if it is one of several equally plausible outcomes." *Hall v.. Washington*, 106 F.3d 742, 748–49 (7th Cir.1997).

### B. Review for Reasonableness

■ In his petition, Hubbard contends that his mandatory life sentence violates the Eighth Amendment prohibitions against cruel and unusual punishment in light of certain mitigating factors. Specifically, Hubbards cites to the fact that he was only eighteen years old at the time of the

4. Illinois law affords defendants the latter of three years from the date of conviction, or six months from the expiration of the time allowed to seek leave to appeal to the Illinois Supreme Court, to file post conviction petitions. *See* 725 ILCS 5/122–1 *et seq.; United State ex rel. Brown v. Welborn*, 1994 WL 444884, at *3 (N.D.Ill. Aug.16, 1994). When Hubbard filed his federal habeas petition on April 10, 1997, post conviction relief was no longer available because he was convicted in September of 1993, and the Illinois Appellate Court affirmed his conviction on direct appeal on December 29, 1995.

offense, he did not intend to kill anyone, he did not personally inflict injury upon the victims [5], and he had a minimal prior criminal record. Hubbard's constitutional challenge is based upon the fact that such factors are irrelevant under the Illinois Criminal Code, mandating the imposition of a life sentence for those convicted of more than one murder regardless of the circumstances. 730 ILCS 5/5–8–1(a)(1)(c); *see also, Rodriguez v. Peters*, 63 F.3d 546, 567 (1995) (finding that Illinois law affords sentencing courts no discretion to reduce the mandatory sentence in light of mitigating evidence). Such a scheme results in the imposition of sentences disproportionate to the crime, particularly, Hubbard contends, in the instant case. *See Solem v. Helm*, 463 U.S. 277, 288, 103 S.Ct. 3001, 3008, 77 L.Ed.2d 637 (1983).

The future of the proportionality test is, at best, uncertain. In a splintered decision, a plurality of the Supreme Court rejected the proportionality test as espoused in Solemn. *Harmelin v. Michigan*, 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991). Justice Kennedy acknowledged that "the Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime." *Harmelin*, 501 U.S. at 1001, 111 S.Ct. at 2705 (Kennedy, J. concurring). In applying an exceedingly narrow Eighth Amendment analysis, a majority of the *Harmelin* Court agreed that a mandatory life sentence without possibility of parole was not cruel and unusual punishment for a first-time felon convicted of possessing over 650 grams of cocaine. *Harmelin*, 501 U.S. at 994–96, 111 S.Ct. at 2700–701 (rejecting an individualized sentencing determination for non-capital cases.)

Since the Supreme Court's holding in *Harmelin*, the Seventh Circuit has similarly rejected arguments that life sentences are cruel and unusual where the sentencing court

was statutorily prohibited form considering mitigating circumstances, because of the " 'qualitative difference between death and all other penalties.' ". *Rodriguez v. Peters*, 63 F.3d 546, 567 (1995) (citing *Harmelin*, 501 U.S. at 995, 111 S.Ct. at 2701). The court noted that the legislature is free to determine that certain crimes dictate minimum penalties regardless of other mitigating factors. *Rodriguez*, 63 F.3d at 568 (upholding constitutionality of life sentence imposed upon 15 year old murderer).

In assessing Hubbard's constitutional challenge, the Illinois appellate court found that *Harmelin* did not support Hubbard's contention that his sentence required a proportionality review. *People v. Hubbard*, No. 93–4419, slip op. at p. 7 (citing *Harmelin v. Michigan*, 501 U.S. 957, 965, 111 S.Ct. 2680, 2685, 115 L.Ed.2d 836 (1991)). The court further found that the statute mandating life imprisonment for multiple murders had withstood previous Eighth Amendment challenges (*Hubbard*, slip op. at p. 7 citing *People v. Glenn*, 233 Ill.App.3d 666, 175 Ill.Dec. 206, 599 N.E.2d 1220 (1992)), and that a life sentence for convictions based upon an accountability theory for multiple murders could scarcely be considered grossly disproportionate in light of *Harmelin's* upholding of a life sentence for a first time drug conviction. *Hubbard*, slip op. at pp. 7–8 (citing *People v. Foster*, 198 Ill.App.3d 986, 145 Ill.Dec. 312, 556 N.E.2d 1214 (1990); *People v. Almendarez*, 266 Ill.App.3d 639, 203 Ill.Dec. 299, 639 N.E.2d 619 (1994)). Accordingly, the appellate court refused to disturb Hubbards's statutorily mandated sentence. *Hubbard*, slip op. at p. 8

We find that such a determination was neither contrary to, nor an unreasonable application of Supreme Court precedent. The Illinois appellate court relied upon the Supreme Court's decision in *Harmelin* in analyzing Hubbard's Eighth Amendment challenge. While the court cited to that portion

---

**5.** Under Illinois law, "[e]vidence that a defendant voluntarily attached himself to a group bent on illegal acts with knowledge of its design supports an inference that he shared the common purpose and will sustain his conviction as a principal for a crime committed by another in furtherance of the venture." *People v. Ruiz*, 94

Ill.2d 245, 68 Ill.Dec. 890, 893, 447 N.E.2d 148, 151 (1982), *cert denied*, 462 U.S. 1112, 103 S.Ct. 2465, 77 L.Ed.2d 1341 (1983). Hubbard does not seriously contend that the evidence fails to supports his conviction under an accountability theory.

of the *Harmelin* opinion authored by Justice Scalia and joined only by Justice Rhenquist, the court's analysis was not a departure from the Supreme Court's holding. The court properly concluded, based upon both state and federal precedent, that a statute imposing a mandatory life sentence was neither cruel nor unusual despite the presence of mitigating factors. To paraphrase the Seventh Circuit's analysis of a similar proportionality claim in *Holman v. Page*, 95 F.3d 481, 485 (7th Cir.1996) (affirming life sentence without parole for juvenile), "[w]ith *Harmelin* as a point of reference, there is no chance" that Hubbard's life sentence for his involvement in a robbery and double murder violates the Eighth Amendment. Because the appellate court's determination of Hubbards's Eighth Amendment challenge was not the product of an unreasonable application of Supreme Court caselaw, we must deny his petition for habeas corpus.

## CONCLUSION

After careful consideration, this Court finds that Hubbard's sentence fully comports with the Eighth Amendment. While Mr. Hubbard contends that a life sentence is unwarranted where he was a somewhat passive and perhaps even unwilling participant in the more serious offenses, the Illinois legislature has seen fit to hold accomplices liable for all reasonably foreseeable crimes committed in furtherance of the criminal plot. The United States Supreme Court's decision in *Harmelin* recognizes that such a determination is not an unconstitutional extension of the legislature's powers. The Seventh Circuit unequivocally set forth its position on habeas corpus petitions in *Tyson v. Trigg*, wherein Chief Judge Posner speaking for the court stated:

> [The defendant] had one appeal from his conviction. Federal habeas corpus does not entitle him to another. A federal court may intervene in the state criminal process, nullifying a defendant's conviction and sentence and forcing the state to try him anew (or else simply let him go), only if the state criminal proceeding was vitiated by an infringement of one or more of a limited subset of the defendant's federal rights. If required to substitute our judg-

ment for that of the [state] court of appeals, we might come to a different conclusion from that court. But we are not authorized to conceive of our job in that way. We are not to offer a further tier of appellate review. We are to determine only whether [the defendant] was deprived of any of his federal rights that can be enforced in a federal habeas corpus proceeding.

*Tyson v. Trigg*, 50 F.3d 436, 438 (7th Cir. 1995).

We cannot conclude that Hubbard's life sentence violated his constitutional rights, therefore his petition for habeas relief must be denied. The Clerk of the Court is directed to dismiss petitioner Shawn Hubbard's Petition for Writ of Habeas Corpus with prejudice. This order shall constitute a final order for purposes of Fed.R.Civ.P. 58. This case is terminated.