No. 3--05--0793

Filed July 24, 2007.
IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2007

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 10th Judicial Circuit, Peoria County, Illinois |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No.  04--CF--613 |
| MARTIZE SMOLLEY, | ) ) | Honorable Scott Shore, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE SCHMIDT delivered the opinion of the court:

At the conclusion of a bench trial, defendant, Martize Smolley, was convicted in the circuit court of Peoria County of two counts of felony murder in violation of section 9--1(a)(3) of the Criminal Code of 1961  (720 ILCS 5/9--1(a)(3)(West 2004)) for killing Kelly Houser and her daughter, Amy Allen.  Defendant was also found guilty of unlawful possession of a firearm.  Pursuant to section 5--8--1(a)(1)(c)(ii) of the Unified Code of Corrections (the Code) (730 ILCS 5/5--8--1(a)(1)(c)(ii) (West 2004)), defendant received a mandatory sentence of natural life

in prison.  He appeals, claiming section 5--8--1(a)(1)(c)(ii) of the Code is unconstitutional as applied to him.  Specifically, defendant argues the sentence mandated by the Code violates the proportionate penalties clause of the Illinois Constitution.  We disagree and affirm his sentence.

BACKGROUND

On June 14, 2004, Kelly Houser and her daughter, Amy Allen, got into the car and left home with the intent to buy some ice cream.  Houser would need some money to pay for the ice cream so she drove to an ATM located in the 500 block of Northeast Jefferson Street in Peoria, Illinois.

On the same evening, defendant armed himself with a fully loaded handgun and proceeded toward the same ATM.  With the intent to rob someone at the ATM, defendant waited across the street and watched until Houser's car approached the machine. Defendant ran across the street.  As Houser withdrew $10 from the ATM, defendant moved toward the car from the rear on the driver's side.  He removed the gun from his waistband and stuck it in the driver's-side front window of the car.  Thereafter, the defendant fired a single shot.  The bullet entered Kelly Houser's left cheek, perforating her brain stem before exiting the back of her head.  The bullet then entered the left side of Amy Allen's head

2

between her eye and her ear, lodging in the back of her brain. Kelly Houser and her daughter both died as a result of gunshot wounds to the head.

The gun that killed Houser and Allen was recovered from defendant's bedroom; defendant ultimately confessed to the murders. Defendant acknowledged that he intended to rob Houser, but claimed that he did not intend to fire the weapon. Defendant informed police that Houser began to drive away after he stuck the gun in the window and movement from the car caused his hand to be struck by the door frame. This contact caused the weapon to accidentally discharge.

Following arguments by the parties, the court found defendant guilty of two counts of felony first degree murder and one count of unlawful possession of a firearm. The court entered not guilty verdicts on two first-degree murder counts that charged defendant with knowingly discharging a handgun into a motor vehicle occupied by the victims while knowing that such an act created a strong probability of death or great bodily harm.

The trial court ordered a presentence investigation report, but noted that it ultimately had no discretion in sentencing defendant due to the mandatory natural life sentence requirements contained in the Code applicable to multiple convictions for

3

murder.  At the sentencing hearing, the State argued that a natural life sentence was appropriate and required by the Code. Defense counsel argued that mitigating circumstances existed that should be considered, most notably that the defendant's juvenile record contained only nonviolent burglaries and that the defendant received good grades as he pursued an education while detained in juvenile facilities.  Defense counsel also argued that the defendant claimed not to intend to kill anyone while committing the armed robbery.  The court imposed the term of natural life imprisonment without the possibility of parole. This appeal followed.

ANALYSIS

Defendant raises a single issue on appeal: the constitutionality of the mandatory natural life sentencing statute (730 ILCS 5/5--8--1(a)(1)(c)(ii) (West 2004)) as it applies to him.  We review questions concerning the constitutionality of a statute *de novo*.  *People v. Moss*, 206 Ill. 2d 503, 795 N.E.2d 208 (2003).

Section 5--8--1(a)(1)(c)(ii) of the Code states:

"(a) Except as otherwise provided in the statute defining the offense, a sentence of imprisonment for a felony shall be a determinate sentence set by the court

4

under this Section, according to the following limitations:

> (1) for first degree murder

> *\*\*\**

> > (c) the court shall sentence the defendant to a term of natural life imprisonment when the death penalty is not imposed if the defendant

> > *\*\*\**

> > > (ii) \*\*\*irrespective of the defendant's age at the time of the commission of the offense, is found guilty of murdering more than one victim[.]" 730 ILCS 5/5-- 8--1(a)(1)(c)(ii) (West 2004).

Defendant argues that this statute, as applied to him, violates the proportionate penalties clause of the Illinois Constitution. It is axiomatic to note that the legislature has discretion to prescribe penalties for defined offenses. *People v. Taylor*, 102 Ill. 2d 201, 464 N.E.2d 1059 (1984). The legislature's discretion includes the power to prescribe mandatory sentences, even if such sentences restrict the judiciary's discretion in imposing sentences. *Taylor*, 102 Ill. 2d at 208. However, the power to prescribe sentences is not

5

absolute as the penalty must satisfy constitutional constrictions. *People v. Davis*, 177 Ill. 2d 495, 687 N.E.2d 24 (1997); *People v. Morris*, 136 Ill. 2d 157, 554 N.E.2d 235 (1990). One such constitutional constriction that legislation must satisfy is the proportional penalties clause of the Illinois Constitution. *People v. Miller,* 202 Ill. 2d 328, 781 N.E.2d 300 (2002).

The proportional penalties clause of the Illinois Constitution states that all "penalties shall be determined *** according to the seriousness of the offense." Ill. Const. 1970, art. I, §11. Courts of review should be reluctant to override the judgment of the legislature with respect to criminal penalties. *People v. Hamm*, 149 Ill. 2d 201, 595 N.E.2d 540 (1992); *People v. Gonzales*, 25 Ill. 2d 235, 184 N.E.2d 833 (1962). It is also true, however, that when defining crimes and their penalties, the General Assembly must consider the constitutional goals of restoring an offender to useful citizenship and of providing a penalty according to the seriousness of the offense. *Taylor*, 102 Ill. 2d at 206.

When faced with a challenge that a statute is unconstitutionally disproportionate as applied to a given defendant, our review begins with the presumption that the

6

statute is constitutional. *Miller*, 202 Ill. 2d at 335. Because of this presumption, the party challenging the statute bears the burden of showing its invalidity. *People v. Davis*, 177 Ill. 2d 495, 687 N.E.2d 24 (1997). A statute may be deemed unconstitutionally disproportionate as applied to a specific defendant when "(1) the punishment for the offense is cruel, degrading, or so wholly disproportionate to the offense as to shock the moral sense of the community; (2) similar offenses are compared and the conduct that creates a less serious threat to the public health and safety is punished more harshly; or (3) identical offenses are given different sentences." *Miller*, 202 Ill. 2d at 338.

Citing *People v. Miller*, 202 Ill. 2d 328, 781 N.E.2d 300 (2002), defendant argues that his natural life sentence, imposed under section 5--8--1(a)(1)(c)(ii) of the Code, is unconstitutionally disproportionate as applied to him. Defendant claims the sentence is cruel, degrading, and so wholly disproportionate to the offense committed that it should shock the moral sense of the community. In *Miller*, our supreme court found that the same section of the Code was unconstitutional as applied to the *Miller* defendant. *Miller*, 202 Ill. 2d at 341. *Miller* involved a 15-year-old defendant who had "one minute to

7

contemplate his decision to participate in the incident and [stand] as a lookout during the shooting, but never handled [the] gun." *Miller*, 202 Ill. 2d at 341. The *Miller* defendant was convicted of two counts of first degree murder (720 ILCS 5/9--1(a)(1) (West 1996)) given that his participation in the crime rendered him accountable for the murders. See 720 ILCS 5/5--2(c) (West 1996). Although 15 years old and a juvenile at the time of the incident, the *Miller* defendant was automatically transferred to adult criminal court pursuant to section 5--4(6)(a) of the Juvenile Court Act of 1987 (705 ILCS 405/5--4(6)(a) (West 1996)). *Miller*, 202 Ill. 2d at 340.

The *Miller* court's finding that the sentence, as applied to the *Miller* defendant, was unconstitutionally disproportionate was based upon the convergence of "these three statutes" (the automatic transfer statute, the accountability statute, and the mandatory sentencing statute), combined with the fact that the *Miller* defendant was "the least culpable offender imaginable." *Miller*, 202 Ill. 2d at 341. Specifically, the court stated:

"[T]he convergence of the Illinois transfer statute, the accountability statute, and the multiple-murder sentencing statute eliminates the court's ability to consider any mitigating factors such as age or degree of

8

participation.  A life sentence without the possibility of parole implies that under any circumstances a juvenile defendant convicted solely by accountability is incorrigible and incapable of rehabilitation for the rest of his life." *Miller*, 202 Ill. 2d at 342-43.

The holding set forth in *Miller*, regarding the convergence of these three statutes, is fact specific.  The court noted that its decision "does not imply that a sentence of life imprisonment for a juvenile offender convicted under a theory of accountability is never appropriate.  It is certainly possible to contemplate a situation where a juvenile offender actively participated in the planning of a crime resulting in the death of two or more individuals, such that a sentence of natural life imprisonment without the possibility of parole is appropriate." *Miller*, 202 Ill. 2d at 341.

The defendant herein argues that similarities between this case and *Miller* necessitate a finding that his sentence is unconstitutional as applied.  We disagree.  It is true that, like the *Miller* defendant, this defendant was one month shy of his sixteenth birthday at the time of this offense, was automatically transferred to adult criminal court, and received a mandatory natural life sentence under section 5--8--1(a)(1)(c)(ii) of the

9

Code.  However, the similarities end there.  The differences between this case and *Miller*, however, are significant.

The *Miller* court emphasized the difference between a juvenile who "actively participate[s]" in a crime that leads to the death of two or more individuals and one, like Miller, who is culpable for acts "completed by other persons."  *Miller*, 202 Ill. 2d at 341.  Defendant was the principal and sole actor in this crime.  He planned the crime, took a loaded weapon to the crime, waited across the street until vulnerable and unsuspecting victims arrived at the ATM, and decided to point a fully-cocked, loaded weapon into the victims' car.  His finger was obviously on the trigger, since he claimed the weapon fired when the victims' car pulled forward and the door post hit his hand.  He fired a single shot that traveled through a mother's head and into the head of her daughter while they were merely trying to take $10 out of an ATM to buy ice cream on a warm summer evening.  Unlike the defendant in *Miller*, defendant was not held accountable for someone else's actions.  He was held accountable for his own actions.  Despite defendant's urging, we decline to expand *Miller* to situations in which a juvenile defendant is the principal and only party criminally liable.  Our supreme courted focused on the fact that the *Miller* defendant was "convicted solely by

10

accountability." *Miller*, 202 Ill. 2d at 343. That is simply not the situation with this defendant.

Defendant argues that, pursuant to the mandatory life term contained in the sentencing statute, "the court was unable to consider the statutory mitigating factor" that he did not intend to "kill these victims." Defendant's argument is a continuation of his comments to the trial court during the sentencing and posttrial motion hearings. During those hearings, defendant argued that "some pretty good arguments in mitigation" were available but for the mandatory life term. Defendant noted that the presentence investigation report indicates his juvenile record contained only delinquency ajudications for nonviolent burglaries. He further noted that "while incarcerated" in juvenile facilities, he received "an awful lot of A's and B's." Defendant claims these facts coupled with his lack of intent to kill anyone should have led the court to the conclusion that the defendant was "a young man who is intelligent and otherwise *** could have been a productive member of society." Therefore, defendant argues, his mandatory life sentence should shock our conscience and be held unconstitutionally disproportionate to the crime he committed since the trial court was precluded from considering factors in mitigation. We disagree.

11

Again, we note that the legislature has the authority to prescribe mandatory sentences that restrict the judiciary's discretion and ability to consider mitigating factors. *Taylor*, 102 Ill. 2d at 208. Therefore, the mere fact that the trial court lacked the authority to consider the facts contained in the presentence investigation report does not, in and of itself, render this sentence unconstitutionally disproportionate.

As the defendant admits, prior to killing Kelly Houser and Amy Allen, he committed multiple burglaries. While released and on juvenile probation after the first burglary, defendant committed the offenses of theft and criminal trespass to a building. After his probation for those offenses terminated, he committed his second burglary.

Again, while released on juvenile probation, defendant violated that probation by committing a criminal trespass to a residence. Following a period of confinement and home electronic monitoring, defendant was again found in violation of his probation and sentenced to the juvenile division of the Illinois Department of Corrections. It was during this confinement in a juvenile facility that defendant received his A's and B's. Further review of defendant's history of confinement reveals, however, that he did more than just study while confined.

12

In addition to being cited for numerous incidents of possession of contraband and threatening others, on October 20, 2004, a youth counselor at the Peoria County Juvenile Detention Center overheard defendant and another detainee discussing an escape plan. Defendant talked about stabbing a staff person during the escape. He also talked about waiting to hatch the plan until a female was working and then "dropping" her. Defendant stated that he "would not stop hitting her 'til she was dead." While defendant was looking for something to cut himself with to initiate his plan, staff intervened.

Contrary to defendant's assertion, the presentence investigation report hardly supports the conclusion that defendant would use his time incarcerated to become a "productive member of society."

We also note that defendant was arrested on June 17, 2004, three days after the murders. The murder weapon and extra ammunition were found under his mattress in his bedroom at 1608 West Butler Street. Defendant undoubtedly had many opportunities to dispose of the murder weapon before taking it to his bedroom more than a mile from the murder scene. (The Illinois River is only three or four blocks away from the murder scene.) His actions in keeping the gun at home are at least consistent with

13

an intent to use it again.  In summary, any mitigating factors found in defendant's presentence report are far outweighed by aggravating factors.  Therefore, even if the trial court had discretion in sentencing, we could not say that the natural life sentence was an abuse of discretion.

The natural life sentence imposed on this defendant is neither cruel, degrading, nor so wholly disproportionate to the offense he committed as to shock the moral sense of the community.  Therefore, we find that section 5--8--1(a)(1)(c)(ii) of the Code (730 ILCS 5/5--8--1(a)(1)(c)(ii) (West 2004)) is not unconstitutional as applied to this defendant and affirm the natural life sentence imposed by the trial court.

CONCLUSION

For the foregoing reasons, the judgment of the circuit court of Peoria County is affirmed.

Affirmed.

LYTTON, P.J., and McDADE, J., concur.

14