NOTICE
Decision filed 07/29/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2025 IL App (5th) 240459-U

NO. 5-24-0459

IN THE

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Jefferson County. |
| | ) | |
| v. | ) | No. 21-CF-144 |
| | ) | |
| BRANDON A. FITZPATRICK, | ) | Honorable |
| | ) | Jerry E. Crisel, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE MOORE delivered the judgment of the court.
Justices Barberis and Boie concurred in the judgment.

**ORDER**

¶ 1     *Held:* The defendant's 10-year prison sentence for possession with intent to deliver methamphetamine, imposed after the revocation of his probation, was not excessive given the seriousness of the offense, the defendant's criminal history, and his failure to comply with probation conditions.

¶ 2     The defendant, Brandon A. Fitzpatrick, was convicted of possession with intent to deliver methamphetamine. He appeals from the circuit court's order that denied his motion to reconsider his 10-year prison sentence, which was imposed after his original sentence of probation was revoked. His appointed counsel on appeal, the Office of the State Appellate Defender (OSAD), has concluded that this appeal lacks substantial merit and accordingly has filed a motion to withdraw as counsel, with an accompanying brief. See *Anders v. California*, 386 U.S. 738 (1967); *People v. Jones*, 38 Ill. 2d 384 (1967). OSAD provided the defendant with a copy of its *Anders*

1

motion and brief. This court gave him ample opportunity to file a *pro se* document showing cause why the judgment should not be affirmed for lack of substantial merit or why OSAD should not be allowed to withdraw as counsel, but he has not filed anything along those lines. Having examined OSAD's *Anders* motion and brief and the entire record on appeal, this court agrees with OSAD's assessment of this case. OSAD must be granted leave to withdraw, and the judgment of the circuit court must be affirmed.

¶ 3                                    I. BACKGROUND

¶ 4                    A. Negotiated Plea of Guilty and Sentence of Probation

¶ 5      Originally, on April 8, 2021, the State charged the defendant with the Class 1 felony of aggravated possession of less than five grams of methamphetamine with intent to deliver and that he did so in a structure protected by a surveillance system. See 720 ILCS 646/55(b)(1)(C) (West 2020).

¶ 6      On November 3, 2021, the State, the defendant, and the defendant's private counsel, Bryan Drew, appeared before the circuit court. It was announced that the parties had reached a fully negotiated plea agreement. Pursuant to that plea agreement, the State filed an amended information, which deleted the aggravating factor from the original charge, and instead charged the defendant with the Class 2 felony of possession with intent to deliver methamphetamine. The plea agreement provided the defendant would be sentenced to time served (62 days) in the Jefferson County jail and an additional term of 30 months' probation.

¶ 7      The judge thoroughly admonished the defendant pursuant to Illinois Supreme Court Rule 402(a) (eff. July 1, 2012), and the defendant pleaded guilty to the amended charge. The defendant also signed a written jury waiver and plea of guilty to the amended charge. Through questioning the defendant, the judge found the plea voluntary. See Ill. S. Ct. R. 402(b) (eff. July 1, 2012). The

State provided a factual basis for the plea, stating (essentially) that a Mount Vernon, Illinois, police officer, while executing a search warrant at a home, encountered the defendant, and that methamphetamine, scales, and "other items indicative of the delivery of *** methamphetamine" were "in close proximity" to him. The judge determined that there was a factual basis for the plea. See Ill. S. Ct. R. 402(c) (eff. July 1, 2012).

¶ 8    The parties waived preparation of a presentence investigation report (PSI). They agreed that the defendant's criminal history included convictions for residential burglary, a Class 1 felony, and burglary, a Class 2 felony, among other felony and misdemeanor convictions accumulated between 2008 and 2015. This history caused the defendant to be eligible for an extended-term prison sentence of up to 14 years. See 730 ILCS 5/5-5-3.2(b)(1), 5-4.5-35(a) (West 2020). This sentencing information was a part of the judge's admonishments to the defendant.

¶ 9    The judge then referred to a proposed written probation order that specified several conditions of probation, *e.g.*, that the defendant refrain from using any illicit controlled substance, that he report to the probation officer within seven days and thereafter as directed by the probation officer, and that he not violate any criminal statute. More specifically, the judge referred to the defendant's purported signature at the bottom of that proposed probation order, acknowledging that the defendant had read and understood the order and that he promised to comply with all of its conditions. The judge asked the defendant whether he, in fact, had signed the order, and he answered in the affirmative.

¶ 10   The judge accepted the defendant's guilty plea as knowing and voluntary. Adopting the parties' agreement, the judge imposed a sentence of probation for a period of 30 months, signing the written probation order that the defendant had previously signed. Several other felony, misdemeanor, and traffic cases were also addressed in the parties' plea agreement, but details of

3

those cases need not be included here. At the end of the plea and sentencing hearing, the court admonished the defendant about his appeal rights. See Ill. S. Ct. R. 605(c) (eff. Oct. 1, 2001). The defendant did not file a motion to withdraw his guilty plea.

¶ 11                              B. Revocation of Probation

¶ 12    In December 2021, just six weeks after the plea and sentencing, the State filed a petition to revoke the defendant's probation. The State filed a supplemental petition to revoke and, in May 2022, an amended petition to revoke. The amended petition to revoke probation alleged that the defendant, during his period of probation, (1) had used a controlled substance; (2) had committed the offense of driving while driver's license suspended; and (3) had committed the offense of assault, by swinging a metal pipe in the direction of, and threatening to kill, Jamey Howell. Subsequently, the State filed a second amended petition to revoke, but this petition was abandoned.

¶ 13    On October 13, 2022, the circuit court held a hearing on the State's amended petition to revoke probation. The defendant, no longer represented by private counsel, was represented by a public defender, Neal Heflin. For the State, four witnesses testified at the probation-revocation hearing—a police officer, two civilians, and a probation officer.

¶ 14    Craig McDaniel, a deputy for the Jefferson County Sheriff's Office, testified that on December 13, 2021, he observed a man, whom he knew as the defendant, driving a car east on Old Fairfield Road, a public roadway in Jefferson County. A LEADS inquiry confirmed McDaniels's suspicion that the defendant's Illinois driver's license was revoked. McDaniels followed, stopped, and arrested the defendant. Also at the revocation hearing, the State introduced a self-authenticating document from the Secretary of State that showed that on December 13, 2021, the defendant's driver's license was revoked. Without objection, the document was admitted into evidence.

4

¶ 15    Jamey Howell testified that on December 15, 2021, in the evening, after dark, he and his wife, Casey Howell, were in their SUV, and he was backing out of the driveway of a towing business at which he worked. (The defendant lived across the street from that towing business.) As Jamey backed out, the defendant "come [*sic*] flying down the road" and almost hit their SUV. The defendant "jumped out" of his vehicle with a "big, long silver pipe" in his hand and "swung" the pipe in the direction of the Howells, screaming that he "was going to kill [them]." As the defendant "went by," he "swung" the pipe and "hit the back of" their SUV, though he did not hit it hard enough to cause any damage. The defendant's actions and words placed Jamey in apprehension of harm. The Howells drove away and promptly phoned the police.

¶ 16    Casey Howell gave testimony that largely corroborated her husband's. She described the pipe swung by the defendant as "metal." The defendant's actions and words caused Casey to be apprehensive of harmful contact.

¶ 17    Maggie Eubanks, a probation officer in Jefferson County, supervised the defendant while he was on probation in the instant case. In April 2022, Eubanks, with the assistance of a male colleague in the probation office, tested the defendant's urine for methamphetamine. Eubanks had been trained in the use of that test. For the defendant, the result of the test was positive. Eubanks informed the defendant of the positive result, and the defendant "did not object to the finding" or request further testing. If the defendant had objected to the finding or had requested further testing, Eubanks would have sent the sample to "a lab," according to procedure. As it was, Eubanks and the defendant "talked about him going to rehab."

¶ 18    Also at the probation-revocation hearing, the defendant and his wife testified for the defense. The defendant testified that he was driving on December 13, 2021, but he thought his driving privileges had been restored. He testified that the Howells' testimonies "were absolutely

fabricated." On December 15, 2021, he was not even driving his car; his coworker was driving it. They were headed for the defendant's house when they encountered some employees of the towing business who were working in the roadway. Blocked from proceeding, the defendant and his coworker waited a few minutes for the employees, but then drove around the block to the defendant's house. The defendant never yelled at the employees. Furthermore, he did not see Jamey Howell, at all, that evening, and he had not seen him at the towing business in months. The defendant was completely unfamiliar with Casey Howell. Expressing bewilderment about the Howells' testimonies, the defendant could not "really understand what this is all about to be honest." As for the drug test, the defendant was drug tested by a male probation officer, who told him that the test "look[ed] all right" and that he was free to leave. A month later, the defendant met with Eubanks, and she told him that he had "failed for amphetamines and methamphetamines." The defendant was never given an opportunity to have the sample sent for further testing, and he denied using any controlled substance while on probation.

¶ 19    The defendant's wife, Elizabeth Fitzpatrick, testified that she remembered the evening of December 15, 2021. She was at home. She heard someone yell, though she could not say who, and she heard tires squeal. She saw her husband arrive home with a coworker and an unknown woman.

¶ 20    At the end of the probation-revocation hearing, the judge found that the State had proved, by a preponderance of the evidence, each of the three allegations contained in the amended petition to revoke probation. According to the judge, Deputy McDaniel had testified credibly that he saw the defendant driving a vehicle on a particular day, the defendant had admitted driving that day, and the defendant's driver's license was undoubtedly revoked that day, regardless of what the defendant may have thought about his driving privileges at the time. The Howells' testimonies were not "exactly the same" but were "close enough to be credible." Eubanks had an imperfect

memory of the events surrounding the drug test, but "it was enough." The judge finished his remarks on the evidence by saying that "any violation of the probation can result in its revocation and resentencing for the Class 2 felony for which he's on probation." Finally, the judge ordered a PSI and scheduled a sentencing hearing.

¶ 21                    C. Sentencing After Probation Revocation

¶ 22    The PSI showed that the defendant was born in March 1989. His criminal history included adult convictions for resisting a peace officer, domestic battery (both misdemeanor and felony), theft (both misdemeanor and felony), two counts of possession of methamphetamine, driving under the influence, aggravated driving under the influence, forgery, failing to return from furlough, burglary, and residential burglary. Residential burglary was a Class 1 felony, for which the defendant was sentenced to five years in prison. This list of prior convictions is not exhaustive. In (at least) three of his adult cases, his probation or conditional discharge was revoked.

¶ 23    On February 2, 2023, the circuit court held a sentencing hearing. The defendant was represented by a different public defender, Matt Vaughn. After hearing the arguments of counsel, the judge found that the defendant was eligible for extended-term sentencing, *i.e.*, imprisonment for a term of 3 to 14 years in prison, followed by one year of mandatory supervised release, or probation for four years.

¶ 24    At the sentencing hearing, the State called two witnesses. Probation officer Eubanks testified that the defendant had been "sporadic" in appearing for his probation appointments and had not participated in drug rehabilitation, despite her directing him, on several occasions, to do so. She indicated that he was a poor candidate for probation. Also testifying for the State was Coltin Crawford, a corporal with the Mount Vernon, Illinois, police department. Crawford testified that on January 21, 2023, the defendant had sent text messages to Kenneth Werts, and on January

7

22, 2023, he had gone to the Werts property, all in violation of two orders of protection with which the defendant had been served. (The orders of protection were plenary orders entered in November 2022 in Jefferson County case Nos. 22-OP-257 and 22-OP-258.) For the defense at the sentencing hearing, three recent letters written by the defendant's wife, his aunt, and his grandmother were admitted into evidence. All three correspondents agreed that the defendant's consumption of drugs and alcohol was the root of all the defendant's other problems, and they all agreed that his three young daughters would be affected horribly by his incarceration. (The daughters were 7 years old, 2 years old, and 18 months old at the time of the sentencing hearing.) His wife and his aunt also wrote of the defendant's need for mental-health treatment.

¶ 25    During argument, the State recommended a sentence of imprisonment of 11 years. The public defender recommended that the defendant be readmitted to probation. According to the public defender, five statutory factors in mitigation applied in this case, *viz.*: the defendant's conduct in this case neither caused nor threatened serious physical harm to another person (see 730 ILCS 5/5-5-3.1(1) (West 2020)), the defendant did not contemplate that his conduct would cause or threaten serious physical harm to another (see *id.* § 5-5-3.1(2)), the defendant's conduct was the result of circumstances unlikely to recur (see *id.* § 5-5-3.1(8)), the defendant's character and attitudes indicate that he is unlikely to commit another crime (see *id.* § 5-5-3.1(9)), and the defendant was the father of very young children who would be negatively affected by his absence (see *id.* § 5-5-3.1(18)). The defendant made a statement in allocution, wherein he stated, *inter alia*, that he was under the impression that he was pleading guilty to simple possession, and not to possession with intent to distribute. He stated that he never had been a drug dealer, only a drug user. He said that he wanted to "quit drinking" and be a good father to his three young daughters.

8

¶ 26     Toward the end of the sentencing hearing, the circuit court advised the defendant of his right to appeal and of all the requirements and filing deadlines relating to that right. See Ill. S. Ct. R. 605(a) (eff. Oct. 1, 2001). The judge then reviewed the statutory factors in aggravation and mitigation. In aggravation, the judge found that the defendant had "a lengthy list of convictions" and that imprisonment was necessary to deter others from committing the same crime. In mitigation, the judge found that two statutory factors applied, to wit: the instant offense neither caused nor threatened serious physical harm to another, and that the defendant's imprisonment would negatively affect his children. However, said the judge, he had not heard much about the defendant's interaction or involvement with his children, and he stated emphatically that children could not be viewed as "little get-out-of-jail-free cards." There was no evidence, the judge stated, to support any of the other mitigating factors proposed by the public defender. The judge, however, did find that the defendant's imprisonment was not necessary to protect the public. Finally, the judge found that probation would deprecate the seriousness of the offense and would be inconsistent with the ends of justice (see 730 ILCS 5/5-6-1(a) (West 2022)), because the defendant "just [has] not made it on probation" and because the judge had "no reason to think" that he would make it on probation. He also found that "this case deserves" an extended sentence. He imposed a sentence of 10 years in prison, plus 12 months of mandatory supervised release (MSR). On the mittimus, he indicated that the offense was committed as a result of the defendant's use of alcohol or controlled substance, and he recommended that the defendant be placed in a substance-abuse program.

¶ 27                    D. Motion to Reconsider the Prison Sentence

¶ 28     On February 3, 2023, *i.e.*, the day after the post-revocation sentencing hearing, the defendant filed, through public defender Vaughn, a motion to reconsider the prison sentence. He

9

alleged that the circuit court erred in ruling that he was eligible for an extended-term sentence. He also alleged that his sentence was excessive, and that the court gave too much weight to aggravating factors and too little weight to mitigating factors and his potential for rehabilitation. In May 2023, the State filed a response to the motion to reconsider sentence.

¶ 29     In January 2024, private counsel Erin Conner, who had entered her appearance in this case in lieu of public defender Vaughn, filed a certificate of compliance with Illinois Supreme Court Rule 604(d) (eff. Dec. 7, 2023), and an addendum to the certificate. She did not make any amendments to Vaughn's motion to reconsider sentence, later explaining to the court that she considered Vaughn's motion sufficient.

¶ 30     On February 15, 2024, the court held a hearing on the defendant's motion to reconsider sentence. The defendant was represented by private counsel Conner. The defense called public defender Neal Heflin to testify. Heflin, who had represented the defendant at the probation-revocation hearing in October 2022, identified an unsigned notice that the Illinois Secretary of State had sent to the defendant, informing him that a suspension of his driver's license, for driving without insurance, had been rescinded. (This court notes that despite the rescission of one suspension, the revocation of the defendant's driver's license remained in effect on December 13, 2021, the date the defendant drove a car and was stopped by Deputy McDaniel, an event that served as a basis for revocation of the defendant's probation on October 13, 2022.) Attorney Conner argued, *inter alia*, that the sentencing court had not given sufficient weight to the defendant's desire and potential for rehabilitation or to the harm that the defendant's lengthy imprisonment would cause his three young daughters. Conner did not pursue the motion to reconsider's allegation that the defendant was ineligible for an extended-term sentence. She sought the defendant's readmission to probation, with residential substance-abuse and mental-health

10

treatment, and "every bell and whistle known to man that is allowable as a condition of probation." The court took the matter under advisement.

¶ 31    On March 21, 2024, the circuit court entered an order that denied the defendant's motion to reconsider sentence. The court found, *inter alia*, that the defendant had "failed to prove any error" in the court's application of the law in its sentencing, and that the sentence was "neither excessive nor unreasonable" given the nature of the offense and the history and character of the defendant.

¶ 32    The defendant filed a timely notice of appeal. The circuit court appointed OSAD as counsel on appeal.

¶ 33                                    II. ANALYSIS

¶ 34    The defendant appeals from the circuit court's order that denied his motion to reconsider his 10-year prison sentence. OSAD has filed an *Anders* motion to withdraw as counsel. This court agrees with OSAD that this appeal is meritless.

¶ 35    On appeal, a sentence will not be altered unless it represents an abuse of discretion. *People v. Perruquet*, 68 Ill. 2d 149, 153 (1977). This same standard applies to the circuit court's ruling on a motion to reconsider sentence. *People v. Kane*, 404 Ill. App. 3d 132, 139 (2010) "A sentence within statutory limits will not be deemed excessive unless it is greatly at variance with the spirit and purpose of the law or manifestly disproportionate to the nature of the offense." *People v. Fern*, 189 Ill. 2d 48, 54 (1999). "The abuse of discretion standard has been viewed as the most deferential standard of review available with the exception of no review at all." *People v. Etherton*, 2017 IL App (5th) 140427, ¶ 15.

¶ 36    The proportionate penalties clause to the Illinois Constitution provides that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of

11

restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. The clause's stated objective of rehabilitating an offender provides limitations on penalties beyond those afforded by the eighth amendment to the United States Constitution (U.S. Const., amend. VIII). *People v. Clemons*, 2012 IL 107821, ¶¶ 39-41. However, "there is no indication that the possibility of rehabilitating an offender was to be given greater weight and consideration than the seriousness of the offense in determining a proper penalty." *People v. Taylor*, 102 Ill. 2d 201, 206 (1984).

¶ 37    The circuit court is better positioned to determine an appropriate sentence for a defendant because it is better positioned to evaluate "the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age." *Perruquet*, 68 Ill. 2d at 154. Therefore, its sentencing decision is "entitled to great deference and weight." *Id.* In other words, the circuit court has broad discretionary powers in imposing a sentence. *People v. Stacey*, 193 Ill. 2d 203, 209 (2000). "The seriousness of the offense is one of the most important factors for the court to consider." *People v. Weiser*, 2013 IL App (5th) 120055, ¶ 32. But see *People v. Flores*, 404 Ill. App. 3d 155, 159 (2020) (the seriousness of the offense is "[t]he most important sentencing factor"). Also, there are statutory factors in mitigation (730 ILCS 5/5-5-3.1 (West 2020)) and in aggravation (*id.* § 5-5-3.2) for the court to consider. For example, if a defendant's criminal conduct "neither caused nor threatened serious physical harm to another" (*id.* § 5-5-3.1(a)(1)), that would be a factor in mitigation; if a defendant "has a history of prior delinquency or criminal activity" (*id.* § 5-5-3.2(a)(3)), that would be a factor in aggravation.

¶ 38    When a defendant is sentenced to probation, but his probation is subsequently revoked, the circuit court is free to sentence him to any disposition "that would have been appropriate for the original offense." *People v. Palmer*, 352 Ill. App. 3d 891, 895 (2004). "Although the sentence imposed after revocation of probation may not constitute punishment for conduct which was the

12

basis of revocation, the defendant's conduct on probation is to be considered by the trial court in assessing the defendant's potential for rehabilitation \*\*\*." *People v. Turner*, 233 Ill. App. 3d 449, 456 (1992).

¶ 39     Here, the defendant pleaded guilty to possession with intent to deliver methamphetamine (720 ILCS 646/55(a)(1) (West 2020)), which was a Class 2 felony because the methamphetamine he possessed weighed less than five grams (*id.* § 55(a)(2)(A)). Ordinarily, a Class 2 felony is punishable by three to seven years in prison (730 ILCS 5/5-4.5-35(a) (West 2020)) or by up to four years on probation (*id.* § 5-4.5-35(d)). However, a defendant will be eligible for an extended-term sentence when he is convicted of "any felony, after having been previously convicted \*\*\* of the same or similar class felony or greater class felony, when such conviction has occurred within 10 years after the previous conviction, excluding time spent in custody, and such charges are separately brought and tried and arise out of different series of acts." 730 ILCS 5/5-5-3.2(b)(1) (West 2020). The instant defendant had a prior conviction for residential burglary, which was a Class 1 felony (720 ILCS 5/19-3(b) (West 2010)). That Class 1 conviction had been entered on March 1, 2011; the defendant had been sentenced to five years in prison, he had been released from prison on February 21, 2014, and he had been discharged from MSR on February 21, 2015. So, he was in the custody of the Department of Corrections until February 21, 2015. See *Newsome v. Hughes*, 131 Ill. App. 3d 872, 874 (1985) (a defendant "remains in the legal custody of the Department of Corrections" until the end of his MSR term).

¶ 40     In the instant case, the defendant pleaded guilty to a Class 2 felony and was sentenced to probation—*i.e.*, the defendant was convicted—on November 3, 2021. That date was well within 10 years after the Class 1 conviction, excluding time spent in custody. Therefore, the defendant was eligible for an extended-term sentence. (The defendant's private counsel acknowledged as

13

much at the February 15, 2024, hearing on the motion to reconsider.) For a Class 2 felony, the extended-term sentencing range was 7 to 14 years in prison. See 730 ILCS 5/5-4.5-35(a) (West 2020).

¶ 41    The defendant in this case was sentenced to prison, after the sentencing judge found that probation would deprecate the seriousness of the defendant's conduct and would be inconsistent with the ends of justice. With exceptions inapplicable here, "the court shall impose a sentence of probation or conditional discharge upon an offender unless, having regard to the nature and circumstance of the offense, and to the history, character and condition of the offender, the court is of the opinion that *** probation or conditional discharge would deprecate the seriousness of the offender's conduct and would be inconsistent with the ends of justice." 730 ILCS 5/5-6-1(a)(2) (West 2020). The offense consisted of the defendant's possessing methamphetamine, in a place where scales, and other indicia of delivery, were close at hand. Furthermore, the defendant had a long and varied criminal history, especially for a man in his early thirties, including 10 felonies and a few misdemeanors. One of his felony crimes was failing to return from furlough. In (at least) three of his prior criminal cases, his probation or conditional discharge had been revoked, and in the instant case, he violated multiple conditions of his probation before it was revoked. This criminal history shows scant respect for the law or for court orders. It shows little potential for rehabilitation. See *People v. Hibbler*, 2019 IL App (4th) 160897, ¶ 102 (the defendant's poor conduct while on probation "reflects adversely on his rehabilitative potential"). There simply was no error in the court's conclusion that probation would deprecate the seriousness of the defendant's conduct.

¶ 42    The prison sentence was for 10 years. This sentence was in the middle of the extended-term sentencing range; it was three years more than the extended-term minimum, and four years

14

less than the extended-term maximum. The judge arrived at this sentence after considering all the statutory factors in mitigation, and after explicitly addressing each of the five mitigating factors that the defendant's public defender asked him to consider. He found that two of those five factors applied to the defendant—that his conduct in this case neither caused nor threatened serious physical harm to another person, and that he was the father of three very young children who would be negatively affected by his absence. However, the judge found that the other three mitigating factors—*i.e.*, that the defendant did not contemplate that his conduct would cause or threaten serious physical harm to another, that the defendant's conduct was the result of circumstances unlikely to recur, or that the defendant's character and attitudes indicated that he was unlikely to commit another crime—were not supported by any evidence. In the end, the two mitigating factors that were found to apply to the defendant were simply overwhelmed by the defendant's awful criminal history and by the need to deter others from committing the same crime. There was no abuse of the circuit court's considerable sentencing discretion.

¶ 43                                    III. CONCLUSION

¶ 44    The circuit court did not abuse its discretion in sentencing the defendant to imprisonment for 10 years, or in denying his motion to reconsider that sentence. Any argument to the contrary would lack merit. Accordingly, OSAD's motion for leave to withdraw as counsel is granted, and the judgment of the circuit court is affirmed.


¶ 45    Motion granted; judgment affirmed.